IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:09-CV-501-MOC-DCK

| TERESA ALEXANDER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 23) and "Defendant's Motion For Summary Judgment" (Document No. 24). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

**I. BACKGROUND**

Plaintiff Teresa Alexander ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On June 15, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.* and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning December 31, 2002. (Transcript of the Record of Proceedings ("Tr.") 14, 612). Plaintiff later amended her alleged disability onset

date to June 1, 2006. (Tr. 612). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on November 9, 2004, and again after reconsideration on January 6, 2005. (Tr. 14). After a hearing on January 27, 2005, Administrative Law Judge Clinton C. Hicks issued an unfavorable decision on March 27, 2007, denying Plaintiff's claim. (Tr. 11-20). The Appeals Council subsequently denied review on March 4, 2008. (Tr. 5-10).

On October 31, 2008, the Honorable Carl Horn, III issued a "Memorandum And Recommendation" recommending that Plaintiff's case be remanded for a new hearing. Alexander v. Astrue, 3:08-cv-178-GCM-CH (W.D.N.C. Oct. 31, 2008). Judge Horn specifically found that "the ALJ's decision that the Plaintiff could perform her past relevant work as a talent agent was not supported by substantial evidence." Id. The Honorable Graham C. Mullen affirmed the "Memorandum And Recommendation" on November 21, 2008. Alexander v. Astrue, 3:08-cv-178-GCM-CH, 2008 WL 5069745 (W.D.N.C. Nov. 21, 2008)

Based on this Court's previous decision, and with instructions from the Appeals Council, on April 30, 2009, Plaintiff again appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks ("ALJ"). (Tr. 612). On July 28, 2009, the ALJ issued another unfavorable decision denying Plaintiff's claim. (Tr. 609-624). Plaintiff did not file objections with the Appeals Council, and the Appeals Council did not assume jurisdiction. As a result, this case is now again ripe for review by this Court. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.984(d) (noting that on a court remand, the ALJ's decision is the Commissioner's final decision if the claimant does not file objections, and the Appeals Council elects to not assume jurisdiction).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 23, 2009. (Document No. 1). "Plaintiff's Motion For Summary Judgment" (Document No. 23) and "...Memorandum In Support Of Motion For Summary Judgment"

(Document No. 23-1), were filed December 14, 2010; and "Defendant's Motion For Summary Judgment" (Document No. 24) and"Memorandum In Support Of The Commissioner's Decision" (Document No. 25), were filed February 17, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that

it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between June 1, 2006, and the date of his decision.[1] (Tr. 613). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from June 1, 2006, through the date of his decision, July 28, 2009. (Tr. 613, 624).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 622-624).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since June 1, 2006, her alleged disability onset date. (Tr. 615). At the second step, the ALJ found that Plaintiff's degenerative disc disease, fibromyalgia, status post carpal tunnel/ulnar transposition, and depression with anxiety, were severe impairments. Id.[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 615-617).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work, with the following additional exertional and nonexertional limitations:

> simple routine repetitive tasks, a non-production pace, a low stress environment with low social contact, a sit/stand option which would

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

> allow her to alternate up to one hour at a time and standing up to 30
> minutes at a time throughout the work day, lifting no more than 20
> pounds and walking no farther than 100 feet at a time.

(Tr. 617). In making his finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "considered opinion evidence." (Tr. 618).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a talent agent or signs sales representative. (Tr. 622). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert ("VE") and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 622-623). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included mail clerk, officer helper, surveillance systems monitor, table worker, and ink printer. (Tr. 623). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 1, 2006, and the date of his decision July 28, 2009. (Tr. 624).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to properly consider the report of Dr. Thomopoulos; (2) the ALJ failed to properly evaluate Plaintiff's alleged limitations; and (3) the ALJ failed to properly assess Plaintiff's functional limitations, restrictions, and work-related abilities. (Document No. 23). The undersigned will discuss each of these contentions in turn.

### A. ALJ's Consideration Of The Report Of Dr. Thomopoulos

In her first assignment of error, Plaintiff argues that the report of Dr. Sofia Thomopoulos, Pharm.D. ("Thomopoulos"), regarding side effects of medications taken by Plaintiff, was not properly considered by the ALJ. (Document No. 23-1, p.3). Plaintiff asserts that Thomopoulos' report, or "medication profile review," was submitted after the hearing with permission from the ALJ. (Document No. 23-1, p.4). Plaintiff contends that the Thomopoulos report "proves the credibility of Claimant's allegations regarding the side effects of her medicine." Id. (citing Tr. 660-725).

Both parties rely on Social Security Ruling ("SSR") 06-03p as authority for their positions. See SSR 06-03p, "Considering Opinions And Other Evidence From Sources Who Are Not 'Acceptable Medical Sources' In Disability Claims..." 2006 WL 2329939 (Aug. 9, 2006). Specifically, each side recognizes the factors an ALJ should consider when weighing the opinions of medical sources who are not "acceptable medical sources." (Document No. 25, pp.6-7; Document No. 23-1, pp.3-4). Those factors include:

> • The examining relationship between the individual and the "acceptable medical source";
> 
> • The treatment relationship between the individual and a treating source, including its length, nature, and extent as well as frequency of examination;
> 
> • The degree to which the "acceptable medical source" presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings;
> 
> • How consistent the medical opinion is with the record as a whole;
> 
> • Whether the opinion is from an "acceptable medical source" who is a specialist and is about medical issues related to his or her area of specialty; and
> 
> • Any other factors brought to our attention, or of which we are aware, which tend to support or contradict the opinion. For example,

> the amount of understanding of our disability programs and their evidentiary requirements that an "acceptable medical source" has, regardless of the source of that understanding, and the extent to which an "acceptable medical source" is familiar with the other information in the case record, are all relevant factors that we will consider in deciding the weight to give to a medical opinion.

SSR 06-03p, 2006 WL 2329939 at *3. The ALJ's decision specifically cited SSR 06-03p and these factors along with its discussion of the weight given to Thomopoulos' report. (Tr. 620).

In response to Plaintiff's first assignment of error, Defendant argues that "a pharmacist is not an 'acceptable medical source' and thus is not entitled to any weight." (Document No. 25, p.6)(citing SSR-06-04p). Defendant goes on to describe how the ALJ applied the factors identified above: Thomopoulos only had one interview with Plaintiff; she was provided a list of medications from Plaintiff's counsel, but had no access to Plaintiff's actual medical records; Thomopoulos recounted Plaintiff's subjective complaints; and Plaintiff had reported no side effects for years. (Document No. 25, p.7) (citing Tr. 620, 660, 662). Defendant concludes that based on the foregoing, Thomopoulos' opinion was inconsistent with the record as a whole, and thus, the ALJ's decision to afford no weight to Dr. Thomopoulos' report was supported by substantial evidence. (Document No. 25, p.7).

The undersigned observes that the ALJ cited to the medical records in concluding that they did "not contain complaints of side effects to the extent alleged" and further cited relevant caselaw holding that "[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record reflects serious functional limitations." (Tr. 620) (quoting Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)).

8

After careful review of the briefs, the ALJ's decision, and SSR 06-03p, the undersigned agrees with Defendant's analysis. It appears that the ALJ clearly considered the Thomopoulos report and relied on substantial evidence in determining what weight to afford that report. See (Tr. 620).

**B. ALJ's Evaluation Of Plaintiff's Impairments**

Next, Plaintiff challenges the ALJ's evaluation of alleged impairments due to Plaintiff's obesity, as well as problems with her hands, wrists and/or elbows. (Document No. 23-1, pp.10-160). Specifically, Plaintiff alleges that the ALJ failed to make allowance for these limitations in his hypothetical to the vocational expert ("VE").

1. Obesity

First, Plaintiff contends that the ALJ failed to even consider obesity at Steps 2 and 3 of the sequential evaluation, and failed to include any limitations caused by Plaintiff's obesity in the hypothetical to the VE. (Document No. 23-1, p.11). As a result, Plaintiff argues that the testimony of the VE is inadequate to support the ALJ's finding at Step 5. Id.

Defendant argues that the burden is on Plaintiff to demonstrate impairments and their limiting effects, and that Plaintiff failed to show how obesity caused increased or discrete symptoms. (Document No. 25, pp.7-8) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); and Cox v. Astrue, 2010 WL 5260843 at *2 (D.Me Dec. 16, 2010) (finding Plaintiff failed to show what relevance her obesity would have to any Listing at Step 3). As Defendant notes, Plaintiff lists facts from which she contends limitations from obesity can be derived; however, there is no clear

9

relationship between these activities and Plaintiff's weight. (Document No. 25, p.7) (citing Document No. 23-1, p.11).

Defendant acknowledges that the record indicates a concern with Plaintiff's weight, but argues that Plaintiff failed to highlight any records reflecting the effects of her obesity. (Document No. 25, p.8). Plaintiff's brief does identify two specific references to obesity. (Document No. 23-1, p.10). The first comes from a report by Dr. Charles Bond on October 19, 2000, almost six years prior to Plaintiff's alleged disability onset date, where he describes her as "a morbidly obese middle aged woman in no apparent distress." (Tr. 337). The second reference purportedly comes from notes taken by the Albemarle Road Family Practice which includes a reference to "obesity," although the context is not completely clear. (Document No. 23-1, p.10) (citing Tr. 247).

The transcript of the hearing reveals that the ALJ briefly queried Plaintiff about her weight, to which she responded that it had fluctuated. (Tr. 735-736). Otherwise, it does not appear that the ALJ, or Plaintiff's counsel, pursued any further discussion of Plaintiff's weight. (Tr. 736-796).

Defendant contends that Plaintiff's failure to address any weight or obesity issues supports a finding that the ALJ relied on substantial evidence in determining that Plaintiff's obesity was not severe. (Document No. 25) (citing McPherson v. Astrue, 605 F.Supp.2d 744, 751-752 (S.D.W.Va. 2009). The undersigned finds the analysis in McPherson instructive.

> Plaintiff charges that neither the ALJ nor the magistrate judge gave Plaintiff's obesity claims proper consideration as set forth in Social Security Ruling (SSR) 02-1p, titled *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*. . . .
>
> Like any other impairment, obesity will only be considered severe if it significantly limits an individual's ability to engage in basic work activities. To assess the severity of an obesity impairment, the regulations give the following guidance:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, [the Commissioner] will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.
>
> . . .
>
> At a hearing on November 3, 2005, the ALJ inquired into the source of Plaintiff's weight problems. Plaintiff attributed it to "[n]ot being as active as I used to be." This short colloquy indicates that the ALJ was aware of Plaintiff's obesity. It is notable that Plaintiff's weight and alleged consequent impairment was not raised by Plaintiff's counsel at the hearing. Thus, aside from the single question from the ALJ, the issue of Plaintiff's obesity was not developed on the record.
>
> The only evidence of Plaintiff's obesity in the objective medical evidence is the recording of her BMI by various doctors and Dr. Shammaa's isolated statement. There is no medical evidence on the record suggesting that Plaintiff's obesity interferes with her ability to engage in work activities or that it is the cause of any of Plaintiff's alleged symptoms. Dr. Shammaa's singular description of Plaintiff as "grossly obese," without more, is not evidence that Plaintiff's obesity is a severe impairment. SSR 02-1p. Accordingly, the Court FINDS that there is substantial evidence to support the Commissioner's omission of obesity from the list of Plaintiff's severe impairments.

McPherson, 605 F.Supp.2d at 751-752.

Much like the plaintiff in McPherson, Plaintiff in this case seems to rely on an isolated statement that she was considered "morbidly obese" in October 2000, in addition to references in the record "from which, a determination of 'body mass index' can be made." (Document No. 23-1, p.10). Also like McPherson, Plaintiff here has failed to cite to medical evidence in the record that

11

suggests that her obesity interferes with her ability to engage in work activities, or that it is the cause of her alleged symptoms. (Document No. 23-1, pp.10-11); McPherson, 605 F.Supp.2d at 752.

Based on the foregoing, the undersigned finds that substantial evidence supports the ALJ's omission of obesity as a severe impairment and as part of the hypothetical posed to the VE.

### 2. Manipulative Limitations

Plaintiff also contends that the "ALJ erred by failing to find the Claimant's synovitis in her thumbs and cubital syndrome in her elbow, serious impairments." (Document No. 23-1, p.12). Plaintiff argues that the "medical record makes numerous references to plaintiff's difficulties with her hands"; however, only one of those alleged references occurred after the alleged onset of her disability. (Document No. 23-1, pp.12-13). Plaintiff also argues that "the ALJ found the severe impairments of synovitis in both thumbs and right cubital (elbow) syndrome at the first hearing, but failed to find any such problems at the second hearing." (Document No. 23, p.14). Plaintiff concludes that the ALJ's failure to include manipulative limitations caused by synovitis and cubital syndrome in his hypothetical to the VE makes his question inadequate, and thus his reliance on the VE's testimony irrelevant to the determination of Plaintiff's ability to work. (Document No. 23-1, p.15).

In response, Defendant contends that substantial evidence supports the ALJ's assessment of the record. (Document No. 25, p.8). Defendant points out that the ALJ informed Plaintiff that he undertook the second hearing de novo. Id.; see also (Tr. 733) ("this is a hearing as a result of a Court remand and I'm treating it as a hearing de novo, that is a brand new proceeding and I will conduct this hearing as if we've not been together before").

Defendant notes in further support of its position the ALJ's observation that

> claimant has not established any manipulative limitations. The
> medical evidence shows that she had successful carpal tunnel release
> surgery prior to the amended alleged disability onset date. As
> discussed below, her testimony regarding pain and numbness in her
> hands is not credible or consistent with the evidence.

(Tr. 617); see also, (Document No. 25, p.10). The ALJ's decision also observed that while Plaintiff complained of pain in her thumbs and left arm in April 2007, and received an injection as requested, "[t]here is no evidence of further treatment for hand pain or numbness since 2007." (Tr. 620).

Defendant argues that since Plaintiff's symptoms appear to have resolved around April 2007, they did not last more than 12 months from the alleged June 2006 disability onset date, and therefore, do not meet the requirements for severe impairments. (Document No. 25, p.10) (citing 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) (noting 12 month duration requirement for severe impairments); Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (plaintiff's failure to seek medical attention or present medical evidence from a crucial time period "seriously undermines his contention that he was continuously disabled during that time"); and Mahoney v. Apfel, 48 F.Supp.2d 237, 246 (E.D.N.Y. 1999) ("the ALJ is permitted to attach significance to plaintiff's failure to seek medical treatment").

The undersigned is persuaded that the ALJ relied on substantial evidence in declining to include manipulative function deficits of Plaintiff's hands and arms in his hypothetical to the ALJ, or the list of severe impairments.

**C. ALJ's Assessment Of Plaintiff's Limitations**

Finally, Plaintiff argues that the ALJ erred by failing to identify Plaintiff's functional limitations as required by SSR 96.8p. (Document No. 23-1, p.16). Plaintiff asserts that "no

13

investigation, discussion, acknowledgment or review of any kind was made by the ALJ, of functional capacity other than acceptance of VE testimony...." (Document No. 23-1, p.17). Specifically, Plaintiff contends that the record indicates the following functional limits, which the ALJ allegedly failed to consider: (1) standing for 10 minutes, as well as bending, increases back pain; (2) difficulty paying attention and following spoken instructions, depending on medication; (3) "moderately limited" ability to maintain attention and concentration for extended periods; (4) only able to stoop occasionally; and (5) limited gross and fine manipulation, "antalgic" gait. (Document No. 23-1, pp.17-18).

Defendant contends that "all of these limitations were addressed or incorporated by the ALJ, or otherwise wholly unsupported." (Document No. 25, p.11). First, as to standing and gait, the ALJ incorporated a sit/stand option in the RFC "because her back pain prevents her from maintaining one position for the entire work day" and limited Plaintiff to "walking no farther than 100 feet at a time." Id. see also, (Tr. 617, 621).

Regarding limitations in concentration and attention, the ALJ's RFC assessment limited Plaintiff to "simple routine repetitive tasks, a non-production pace, a low stress environment with low social contact." (Tr. 617). Defendant contends this adequately addresses Plaintiff's concerns and is consistent with medical records reflecting Dr. Castro's opinion. (Document No. 25, p.12). Defendant notes that "Dr. Castro specifically observed that Plaintiff was not significantly limited in understanding, remembering, and carrying out very short instructions, and was only mildly limited in understanding and remembering detailed instructions. Id. (citing Tr. 726).

14

With respect to bending and stooping, Defendant argues that Plaintiff has highlighted one treatment note supporting a bending limitation, as well as one finding that she can stoop only occasionally. (Document No. 25, p.13) (citing Tr. 315, 114).

Regarding alleged "limited gross and fine manipulation," Plaintiff cites to the same 2005 assessment she relies on to support her stooping limitation. Besides the fact that this support pre-dates her alleged disability onset date, the undersigned notes that the assessment provides that she is capable of "[f]requent but not continuous handling [gross manipulation] and fingering [fine manipulation] on R [and is] unlimited on L." (Tr. 115).

The undersigned is persuaded that substantial evidence supports the ALJ's decision with regard to his assessment of Plaintiff's RFC and limitations. To the extent a limitation to only occasional bending and stooping should have been more fully recognized, or a limitation to "frequent but not continuous handling and fingering" should have been included, the undersigned does not find sufficient cause for remand or reversal.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 23) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 24) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

_____
David C. Keesler
United States Magistrate Judge

Signed: May 25, 2011